**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| DTC Engineers and Constructors, LLC,   Petitioner,   v.   Empresas Sabaer, et al.,   Respondents. | **Civil No. 15-1168 (SEC)** |

**OPINION & ORDER**

Petitioner DTC Engineers & Constructors, LLC (Petitioner or DTC) entered into a contract with the U.S. Army Corps of Engineers for the design and construction of the Armed Forces Reserve Center in Mayagüez, Puerto Rico. DTC then subcontracted with Respondents Empresas Sabaer, Inc. and BBS Developers, S.E. to perform certain work for that project. A dispute later arose concerning the quality of Respondents' work on the project. Pursuant to the Subcontract's arbitration clause, DTC filed a Petition for Arbitration before the American Arbitration Association. At the conclusion of that proceeding, the Arbitrator ruled that Respondents had breached the Subcontract, and granted Petitioner $731,109.88 in damages. The Arbitrator also ruled that the Subcontract contained an indemnity clause obligating Respondents to hold Petitioner harmless from certain claims filed by other subcontractors.

In this proceeding, Petitioner seeks to confirm the aforementioned arbitration award. See Docket # 1. Respondents, in turn, move the Court to vacate the award. See Docket # 8.[1] For the reasons that follow, the award is confirmed.

___

[1] The FAA sets forth the sole method by which an aggrieved party may challenge an arbitration award; to do so, the party must serve a "motion to vacate within three months of the rendering of the award." Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir.1986); 9 U.S.C. § 12. Here, Respondents instead submitted a "counterclaim" seeking

### I.   Standard of Review

The Federal Arbitration Act ("FAA") expresses a presumption that arbitration awards will be confirmed. See 9 U.S.C. § 9 (if the parties have agreed to judicial confirmation of the award, "the court must grant such [a confirmation] order unless the award is vacated, modified or corrected as prescribed in sections 10 and 11 of [the Federal Arbitration Act]"); Andersons, Inc. v. Horton Farms, Inc., 166 F.3d 308, 328 (6th Cir. 1998). Judicial review of arbitral awards is very limited; indeed, it is "one of the narrowest standards of judicial review in all of American jurisprudence." UMass Mem'l Med. Ctr., Inc. v. United Food And Commercial Workers Union, 527 F.3d 1, 4 (1st Cir. 2008). This exacting standard makes arbitral awards "nearly impervious to judicial oversight." Id. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).

> The FAA sets forth four bases for vacating an arbitration award. These are:
>
> **(1)** where the award was procured by corruption, fraud, or undue means;
>
> **(2)** where there was evident partiality or corruption in the arbitrators, or either of them;
>
> **(3)** where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> **(4)** where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

---

to vacate the award. This is plainly improper. But since their intent is clear, the Court shall exercise its discretion and construe the counterclaim as a motion to vacate. See National Cas. Co. v. First State Ins. Group, 430 F.3d 492, 496 n. 3 (1st Cir. 2005) (district court acted properly in treating a complaint as a request for *vacatur* under the FAA, especially where the misnomer issue was not raised by the parties). "To do otherwise would be to choose form over substance." BBVA Sec. of Puerto Rico v. Cintrón, Civ. No. 10-1927 (JAG), 2012 WL 2002304, at *1 (D.P.R. June 4, 2012).

See 9 U.S.C. § 10(a)(1)-(a)(4). Courts have also recognized other bases for vacating awards, most notably the "manifest disregard of law" doctrine. Recently, the Supreme Court cast doubt on the continuing validity of this doctrine, and indeed, on any non-statutory basis for vacatur of an award. See Raymond James Financial Services, Inc. v. Fenyk, 780 F.3d 59, 65 (1st Cir. 2015) (noting that a circuit split on this point has formed following the Supreme Court's decision in Hall Street Associates v. Mattel, 552 U.S. 576 (2008)). Yet there is no need to decide this issue here, as Respondents cabin their arguments for vacatur under 9 U.S.C. § 10(a)(4) – that is, that the Arbitrator exceeded his powers, or "so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

## II.  Analysis

Respondents' opening salvo focuses on the form of the award rendered by the Arbitrator. In essence, they claim that the Arbitrator exceeded his powers by failing to render "findings of fact and conclusions of law" as per the parties' stipulation. They later admit, however, that the award actually contains "seventeen (17) findings of fact." See e.g. Docket # 20, ¶ 50. Respondents also complain that the award does not contain conclusions of law, but rather "jumps from the findings of fact to its rulings." Id., ¶ 63. Yet, a cursory examination of the award reveals that Respondents are merely splitting hairs. The Arbitrator determined that Sabaer was liable to DTC for "breaching its contract," and further determined that "Sabaer [owed] DTC a duty to defend and indemnify DTC against the claims of Dantzler and LAC, as it is contractually obligated to do." See Docket 14 at 8. These are clearly conclusions of law based on the Arbitrator's interpretation of the subcontract and his findings of fact. Respondents' challenge to the form of the Arbitrator's ruling based on the alleged lack of factual and legal findings thus fails.

Respondents next press various arguments concerning the sufficiency of the factual and legal rulings made by the Arbitrator. Due to the highly deferential standard of review applicable here, none of these arguments carries much force.

Respondents first reference Article 9.b of the subcontract, which provides as follows:

> With respect to any controversy between Contractor [DTC] and Subcontractor [Sabaer] not involving the Owner, the Prime Contract Documents or an Owner Claim, Contractor shall issue a decision which shall be final and binding unless, within fifteen (15) days of receipt, the Subcontractor files a notification in writing of its intent to arbitrate the controversy in accordance with Paragraph 9.c.

See Docket # 1-1, p. 7.

Respondents characterize this provision as a precondition to the arbitration held in this case. According to Respondents, this provision means that "the Subcontractor, not Contractor DTC, is the only party entitled to request arbitration to a controversy" under the Subcontract. Since the Arbitrator did not make any findings regarding this provision, Respondents argue that the Award violates the general principle that a party "cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." See Docket # 20 at ¶ 43 (citing Simon v. Pfizer Inc., 398 F.3d 765, 775 (6th Cir. 2005)). However, Article 9.b cannot be read in isolation from the rest of the contract. The very next section – which is referenced in the text cited by Respondent – provides as follows:

> <u>Subject to Subcontractor's compliance with such notice requirements</u> [that is, Article 9.b], <u>any controversy</u> between Contractor and Subcontractor not involving Owner, the Primer Contract Documents, or an Owner claim and which is not amicably resolved by the Parties will be submitted to non-binding mediation. If such mediation does not resolve the controversy then it shall be submitted to binding arbitration.

See Docket # 1-1, p. 7 (emphasis added). Given this context, then, Article 9.b can only be construed as a limitation on the <u>Subcontractor's</u> right to seek arbitration. That is, in order to invoke arbitration under Article 9.c, Sabaer had to file a "notification in writing of its intent to arbitrate" within 15 days of DTC's initial resolution of the controversy. But that was not at issue here, as it was the Contractor (DTC) who sought to arbitrate its breach of contract claim. Since Article 9 sets no condition on the

Contractor's right to seek arbitration, there was no reason for which the Arbitrator had to make any finding concerning the arbitrability of Petitioner's claim under Article 9. Respondents' argument thus fails on the merits.[2]

Respondents' next argue that the Arbitrator incorrectly concluded that Article 4.c of the subcontract contained an indemnity clause in favor of Petitioner that survived completion of the work or the termination of the subcontract.  For purposes of vacatur, this argument goes nowhere. Even if the Arbitrator had misinterpreted the subcontract, this claimed error of law provides no foothold for the Court to vacate the award under § 10 of the FAA. United Paperworkers, 484 U.S. at 38 ("Courts … do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.").

But more concretely, even if the FAA allowed vacatur on this ground, Respondents' argument would still fail. In short, Respondents claim that Article 4.c is irrelevant because it relates to the liability of the Subcontractor for claims of damages to persons or property, and that no such claim was asserted here. But Respondents' cherry-picked citation ends up changing the whole meaning of the Subcontract. In its relevant part, Article 4.c provides that:

> To the fullest extent permitted by law, the Subcontractor shall indemnity, defend, and hold harmless the Contractor […] from and against all claims, damages, demands, losses, expenses, fines, causes of action, suits or other liabilities arising out of or resulting from […] the performance of Subcontractor's Work under the Subcontract, whether such claim […] is attributable to bodily injury, personal injury […] or destruction of tangible property […].

---

[2] In any event, Respondents appear to have waived this argument. Before the arbitration proceeding in this case concluded, Respondents sued DTC in this district for breach of contract. See Civil No. 13-1468 (GAG). DTC filed a motion to dismiss, arguing that the subcontract compelled the arbitration of that claim. Noting that the subcontract contained "broad language" in favor of arbitration, Judge Gelpí ruled that the controversy surrounding "Defendant's alleged lack of payment and Plaintiffs' alleged defective work" fell within the scope of the arbitration clause. But Respondents do not indicate whether the argument they raise here, relating to the arbitrability of DTC's claim, was ever presented before Judge Gelpí, or, for that matter, before the Arbitrator himself.

See Docket # 1-1, p. 4 (emphasis added). This last bit, which was omitted by Respondents, is critical. Contrary to their argument, the indemnity contained in Article 4.c operates even if the claim asserted against the Contractor is based on damages to a person or property. The Arbitrator thus made a plausible interpretation of the subcontract, which is all that is needed to confirm the award on this point.

Finally, Respondents make a bifurcated attack on the Arbitrator's conclusion that "Sabaer owes DTC $731,109.88 for breaching its contract." Respondents claim that the award contains no factual support for the conclusion that a breach of contract actually materialized, and neither for the amount of damages awarded to Petitioner. Both arguments fail.

Article 4 of the Subcontract makes the Subcontractor liable "for all costs Contractor incurs as a result of any failure of Subcontractor […] to perform." Id. As discussed above, the Arbitrator also found that Article 4 contains an indemnity clause shielding the Contractor from any liability arising from "the performance of Subcontractor's Work… ." Id. Here, the findings of fact contained in the award plausibly support the conclusion that Respondents had failed to perform under the subcontract. For instance, the Arbitrator found that Sabaer had only performed 67% of the work required under the contract, rather than the 87% it had claimed. Aside from underperforming, the Arbitrator also found that Respondents' work was "defective" and required remediation. These findings, combined with the indemnity clause highlighted above, show that the Arbitrator adequately supported his conclusion that Respondents breached the subcontract at issue, and are liable to Petitioner.

Respondents' argument concerning the amount of damages awarded to Petitioner fares no better. The subcontract provides that the Subcontractor's liability includes, but is not limited to, "(1) liquidated damages; (2) Contractor's increased costs […] of performance […] resulting from Subcontractor caused delays or improper Subcontractor work; (2) [sic] warranty and rework costs; (4) liability to third parties; and (5) attorney's fees and related costs." See Article 4.b, Docket # 1-1, p. 4. The

subcontract expressly provides that the Contractor is entitled to recover for "improper Subcontractor work," and the Arbitrator found that Sabaer's work was "defective." It is true that the award itself does not contain a detailed breakdown of the $731,109.88 that was awarded to Petitioner for the breach of contract. But Respondents do not provide any authority for the proposition that the Arbitrator had to offer such a breakdown here.

In any event, the omission is of little significance, as the amount awarded is identical to the amount requested by Petitioner in its arbitration brief, which does contain such an itemization. See Docket # 1-7 at 27. All of the amounts identified in Petitioner's brief are damages that could be plausibly awarded under the liability provision of the subcontract. The Court thus finds no ground to disturb the Arbitrator's clear intent to award the full amount of damages requested by Petitioner.

Finally, in passing, Respondents complain that the Arbitrator failed to issue any rulings concerning the affirmative defenses they raised below. However, the Arbitrator issued an award in favor of DTC, which implicitly means that he did not find merit in any of those defenses. Perhaps Respondent's undeveloped argument would carry force if they had requested that the Arbitrator issue a "reasoned opinion" rather than "findings of fact and conclusions of law." But Respondents have not provided the Court with any authority on this point.

### III.  Conclusion

Frequently, the exacting standard of review applicable to judicial review of arbitration awards compels the losing party to engage in contrived semantic gymnastics in order to seek vacatur of the award. Unfortunately, all this does is defeat the purpose of arbitration, which is to ensure a speedy and final resolution to disputes between parties. Such is the case here. For the reasons stated above, Respondents' motion to vacate is **DENIED**, and the the Award issued in favor of Petitioner is **CONFIRMED**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2016.

                                             *s/ Salvador E. Casellas*
                                             SALVADOR E. CASELLAS
                                             U.S. Senior District Judge